Chief Judge Desmond (dissenting).
Defendant, indicted in April, 1950 on charges of robbery, first degree, and criminally possessing a pistol after a prior conviction, was found guilty of these crimes in August, 1950 and sentenced to a long prison term. However, it was not until March, 1964 that this criminal judgment was affirmed by Appellate Division, First Department. Defendant’s principal position on this appeal to our court is that he is entitled to reversal of the judgment, dismissal of the indictment, and discharge from custody because for 12 years he was denied access to the stenographic minutes of his trial and so was prevented from having his appeal heard in the Appellate Division. As it seems to us this relief, extreme though it may appear to be, must be granted in order to enforce and apply policies many times announced by this court as to inordinate delays in criminal prosecutions (and, indeed, to vindicate the *862 ancient promise of Magna Charta: “ To no one will we * * * delay right or justice ”).
Defendant’s appeal to the Appellate Division was taken in November, 1950. Beginning in that month and during the following 12 years he made about 10 applications, some to the Appellate Division and some to the trial court, asking in various forms that his appeal be heard in the Appellate Division as that of an indigent person including several requests that he be furnished free of charge the stenographic minutes of his trial. All these petitions were denied. Actually, his appeal had been dismissed, for failure to prosecute, by an Appellate Division order entered on March 6, 1951, but apparently defendant never knew of the dismissal. At any rate, he went right ahead with his demands for the trial transcript. In February, 1963 this court, acting on an appeal by defendant in a coram nobis proceeding, remitted the matter to the Appellate Division with leave to defendant “ to raise before that court the issue of equal protection of the laws, so that it may explore the validity of the original dismissal of his appeal from the judgment of conviction (Griffin v. Illinois, 351 U. S. 12; People v. Kalan, 2 N Y 2d 278; People v. Pitts, 6 N Y 2d 688; People v. Breslin, 4 N Y 2d 73).” (12 N Y 2d 250, 252.) After this remand the Appellate Division in June, 1963 reinstated defendant’s appeal in the coram nobis proceeding above referred to. Then, a month later, the Appellate Division vacated the 1951 dismissal of defendant’s appeal from his conviction, assigned counsel to defendant and allowed the appeal to be prosecuted on the original record. The appeal was heard in the Appellate Division and in March, 1964 the judgment was unanimously affirmed without opinion. Counsel assigned by the Appellate Division is still acting for defendant. Leave to appeal to this court was granted by an Associate Judge and we made an order permitting the appeal to be heard in this court on the original record.
During the whole of the 12-year period during which defendant was trying to get the trial minutes, a copy thereof was on file in the County Clerk’s office (see Code Crim. Pro., § 456, as prior to 1962 amdt.) but defendant, imprisoned and without a lawyer, could not get access to it.
In 1956 the United States Supreme Court held in Griffin v. Illinois (351 U. S. 12) that equal protection of the law under the Federal Constitution requires that when State laws authorize *863 a criminal appeal tlie State must furnish to an indigent, defendant a copy of the trial record. In 1957, in People v. Kalan (2 N Y 2d 278), our court found a deprivation of defendant’s constitutional rights in the refusal by the Appellate Division to grant defendant’s request for assignment of counsel in that court. We said in Kalan that, since defendant was in prison and unable to inspect the filed minutes of trial, lack of counsel prevented effective use by him of his right to appeal. The next year we had before us People v. Pride (3 N Y 2d 545) in which we ruled unanimously that, where defendant could not prepare and present his appeal without at least being allowed to view the minutes and make copies thereof, it was violative of his constitutional rights to apply against him a section of the Buffalo City Court Act which required payment of stenographer’s fees in an amount which, because of Pride’s financial circumstances, was prohibitive. In the Pride opinion (p. 549) we reminded the Bench and Bar that “ Our State has always regarded the right to appellate review in criminal matters an integral part of our jurisdictional system and treated it as such.” We recounted in Pride (supra) that long before the Supreme Court’s pronouncements in Griffin v. Illinois (supra) it had been the consistent policy of the New York courts to preserve and promote the right of an appeal, citing decisions as far back as People v. Hines (57 App. Div. 419 [1901]). The insistence of this court on the furnishing of such appellate court procedures as are necessary to effectuate this fundamental right of appeal has been expressed in a number of other eases such as People v. Breslin (4 N Y 2d 73), People v. Williams (6 N Y 2d 193), People v. Pitts (6 N Y 2d 288), People v. Wilson (7 N Y 2d 568), and People v. Borum (8 N Y 2d 177). This line of decisions began in 1956 and each of them, under varying circumstances, flatly asserted that fundamental rights are infringed where a defendant, imprisoned and without funds, is denied access to and examination and use of the trial record. Several of this defendant’s unsuccessful applications were made in the years 1956, 1957, 1958 and 1960.
More difficult is the question: what are defendant’s rights at this point? It would be easy to say that despite the long delays he has lost nothing since his appeal was finally heard in the Appellate Division and the conviction was affirmed. But we are concerned with rules and principles, not speculations as to *864 particular situations. The answer, as it seems to us, must be by application to this case of the concepts discussed and upheld in People v. Prosser (309 N. Y. 353), People v. Wilson (8 N Y 2d 391), and People ex rel. Harty v. Fay (10 N Y 2d 374). As we said in Harty (p. 379), citing Wilson: “ This State has a strong policy against unreasonable delays in criminal causes and it has been enforced to the full”. In each of these cases the long delays resulted in our dismissal of the indictment. The indictments against Prosser and Wilson were thrown out after delays of several years in bringing them to trial. The delay acted upon in People ex rel. Harty v. Fay (supra) was one of 6 years in imposing a criminal sentence. Holding that the New York courts had lost jurisdiction of Harty’s case, we said (10 N Y 2d, p. 379): “ If sentencing can be delayed 6 years without failure of jurisdiction, it can be delayed forever.” The reason was that sentencing is an integral part of our system of criminal procedure and an excessive delay in sentencing deprives defendant of his right to a prompt trial (Code Crim. Pro., § 8). But, as we had made plain in People v. Pride (3 N Y 2d 549, supra), the right to appellate review in criminal cases, too, is “ an integral part of our judicial system ’ ’ and we have always “ treated it as such”. To our mind all this can mean no less than this: regardless of actual prejudice an extremely long and unnecessary denial of the defendant’s right to have his criminal appeal heard destroys the jurisdiction of the courts and entitles him to a dismissal of the indictment. We can make no reasonable distinction between the situation here and that in the Harty case (supra) where the courts were held to have lost jurisdiction of a criminal cause because of a 6-year delay in imposing sentence even though Harty, unlike our present defendant, never complained of the delay or pressed for prompt sentencing. We said that Harty had “ an enforcible interest in having judgment pronounced ” and surely the same may be said as to this defendant’s interest in having his appeal heard. One of the reasons stated in Harty for the pronouncement 'of the policy was that “ Lack of a judgment prevents an appeal ”, Here the judgment against defendant had been pronounced but his right to appeal was withheld from him for long years.
The judgment appealed from should be reversed and the indictment dismissed.
Judgment affirmed.